UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | | |
|---|---|---|
| TELANO WHITE, | ) | |
| Petitioner, | ) ) ) | Civil No. 5:20-070-WOB |
| v. | ) ) | |
| FRANCISCO QUINTANA, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Respondent. | ) | |

*** *** *** ***

Telano White is an inmate at the Federal Medical Center in Lexington, Kentucky. Proceeding without a lawyer, White filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he challenges the imposition of disciplinary sanctions against him. [R. 1]. The Respondent filed a response to White's petition [R. 9], and White then filed a reply [R. 11]. Therefore, White's petition is now ripe for a decision by this Court. For the reasons set forth below, the Court will deny White's petition.

According to a Discipline Hearing Officer's (DHO's) report, in May 2019, prison officials searched the cell that White shared with another inmate. [R. 9-2 at 12]. During the search, the officials found a book containing a page that "appeared to be soaked in an unknown substance." [*Id.*]. According to the report, "a sample from the page was sent to the outside laboratory for testing," and the sample ultimately tested positive for compounds that "are structurally related to synthetic cannabinoids." [*Id.*].

The DHO's report also indicates that, around this same time, officials reviewed White's e-mail account and found "suspicious coded email communications" from early February 2019. [*See id.*]. For example, White had received an e-mail from an outside address saying, "She only came through with eight and said she will send the rest tomorrow." [*Id.*]. White then responded

to this e-mail by saying, "It's so hard to get people on the outside to do the right thing! I just got on her about it because I gave her every dime to take care of it. . . . I'm certain she'll be sending the rest tomorrow! Hit me as soon as she does." [*Id.*].

The prison's special investigative services (SIS) department reviewed the matter, including the laboratory results and White's external communications. [R. 9-2 at 8-9]. Ultimately, a SIS technician determined that "White orchestrated the introduction of the book into the institution." [*Id.* at 9]. As a result, the SIS technician completed an incident report and charged White with a number of offenses, including but not limited to a "Code 113 offense" for "possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia not prescribed for the individual by the medical staff," and a "Code 199 most like Code 197 offense" for the "use of the e-mail to further criminal activity." [*See id.* at 8-9].

On June 17, 2019, a prison official gave White a copy of the incident report and advised him of his rights at an upcoming disciplinary hearing. [R. 9-2 at 9, 10, 11]. According to evidence in the record, White indicated that he understood his rights and "stated 'I'm good' when asked if he would like to make a statement regarding [the] incident report." [*Id.* at 10]. White also indicated that he did not wish to call any witnesses at an upcoming hearing, and he "did not provide any mitigating or extenuating evidence or circumstances regarding [the] incident." [*Id.*]. Eventually, a unit disciplinary committee referred the matter to a DHO for further proceedings.

A disciplinary hearing was held one month later, on July 17, 2019. [*See* R. 9-2 at 11-14]. According to the DHO's report, White waived his right to have the assistance of a staff representative and did not request any witnesses. [*Id.* at 11]. Instead, White said, "I had the book and take responsibility for my part." [*Id.*]. The DHO considered this statement, as well as the other evidence, including but not limited to photographs taken by the SIS technician, a memorandum written by the same SIS technician, the toxicology report, a chain of custody form,

and White's e-mail communications. [*See id.* at 12 (listing the documentary evidence; *see also id.* at 12-13 (discussing the evidence at length)]. In the end, the DHO found that the greater weight of the evidence supported the "Code 113" and "Code 199 most like Code 197" charges against White. [*Id.* at 13]. Therefore, the DHO ordered that White lose over 200 days of good conduct time and imposed other sanctions. [*See id.*]. The DHO then advised White of his right to appeal the decision, and, on July 19, 2019, a copy of the DHO's report was delivered to him. [*Id.* at 14].

White appealed the DHO's decision administratively within the Bureau of Prisons, but his efforts were unsuccessful. White then filed his § 2241 petition, and he asks this Court to grant him relief, including the restoration of the good conduct time that he lost. [*See* R. 1 at 8].

White's habeas petition, however, is unavailing. For starters, despite White's claims to the contrary, he has not demonstrated that he was denied the various procedural protections that he was due. Under the law, White was entitled to advance notice of the charges against him, the opportunity to present evidence and witnesses in his defense, and a written decision explaining the grounds used to determine his guilt. *See Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974). Here, as discussed above, the record reflects that White received each of these procedural protections. Indeed, White received notice of the charges against him well in advance of his disciplinary hearing;[1] he was given the opportunity to present evidence and witnesses in his defense; and prison officials provided him with a written decision explaining the grounds used to determine his guilt. [*See* R. 9-2 at 8-14]. Thus, there is no merit to White's claim that his due process rights were violated.

---

[1] White suggests that there was something improper about the fact that he was charged with an offense described as "Code 199 most like Code 197." However, as the Respondent correctly points out, this charge was plainly defined in the incident report. Thus, White was given proper notice of this e-mail-related charge against him.

3

The only remaining question then is whether there was "some evidence" in the record to support the DHO's decision in this case. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Selby v. Caruso*, 734 F.3d 554, 558-59 (6th Cir. 2013). This is a very low threshold. After all, the Court does not examine the entire record or independently assess the credibility of witnesses. *Hill*, 472 U.S. at 455. Instead, the Court merely asks "whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56 (emphasis added); *see also Higgs v. Bland*, 888 F.2d 443, 448-49 (6th Cir. 1989) (discussing this standard).

In this case, there was certainly some evidence in the record to support the DHO's decision. Indeed, the DHO's report details the evidence in this case linking White to the offenses in question, including but not limited to photographs taken by the SIS technician, a memorandum written by the same SIS technician, the toxicology report, a chain of custody form, and White's e-mail communications. [*See* R. 9-2 at 12-13]. This evidence was clearly enough to meet the very low threshold applicable here. *See Hill*, 472 U.S. at 454.

In conclusion, White has not demonstrated that he was denied the procedural protections he was due, and there was more than enough evidence to support the DHO's decision in this case. Accordingly, it is **ORDERED** as follows:

1. White's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 1] is **DENIED**.
2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.
3. The Court will enter a corresponding Judgment.

This 23rd day of June, 2020.



Signed By:
William O. Bertelsman   WOB
United States District Judge